Exhibit 1

1  ADAM R.F. GUSTAFSON, Acting Assistant Attorney General
   U.S. Department of Justice
2  Environment & Natural Resources Division
3  MEREDITH L. FLAX, Deputy Section Chief
   NICOLE M. SMITH, Assistant Chief
4  ALISON C. FINNEGAN, Senior Trial Attorney
   JACOB JOSE, Trial Attorney
5  Wildlife & Marine Resources Section
   Ben Franklin Station, P.O. Box 7611
6  Washington, D.C. 20044-7611
7  Tel: (202) 305-0500

8  *Attorneys for Defendants*

9            UNITED STATES DISTRICT COURT
10      FOR THE EASTERN DISTRICT OF CALIFORNIA

11
12  KLAMATH FOREST ALLIANCE, et
    al.,
13                                         Case No. 2:24-cv-2347-DC-CSK
14              Plaintiffs,
                                        **DECLARATION OF ANN BOWERS RE:**
15         v.                           **NOTICE OF ERRATA**
16  U.S. FISH AND WILDLIFE SERVICE,
    et al.,
17
18              Defendants.
19
20

21  I, Ann Bowers, state as follows:

22         1.      I am the Forest Wildlife Biologist for the Shasta-Trinity National Forest, a

23  position I have held since July 2018. I work with interdisciplinary teams at the Forest

24  Supervisor's Office and ranger district levels to review and comment on District and Forest level

25  proposed actions, synthesizing resource information including wildlife, fire management, and

26  silviculture for planning and implementation of projects in compliance with the Northwest Forest

27  Plan, the National Environmental Policy Act, the Endangered Species Act.

28

2.       On September 2, 2025, I signed a declaration that was included as an attachment to Federal Defendants' memorandum opposing Plaintiffs' motion for a preliminary injunction ("September 2, 2025 Declaration"). Among other things, my qualifications, experience, and expertise were discussed and are not repeated here. My declaration also discussed my understanding of the 2012 revision of the Protocol for Surveying Proposed Management Activities that May Impact Northern Spotted Owls ("Revised Protocol") and my desk review of data sheets for 2025 surveys that were conducted by Forest Service personnel from May to August in the South Fork Sacramento Public Safety and Restoration Project ("Project").

3.       In Paragraph 9 of my September 2, 2025 Declaration, I described the survey period for the NSO as set forth in the Revised Protocol. In the final sentence of that paragraph, I stated that "Surveys outside this timeframe would require concurrence from USFWS to be counted towards a Complete Visit." My reference to a "Complete Visit" in this sentence was a drafting error, and I had intended to refer to a "complete annual survey," as the purpose of the paragraph – and of the section of the Revised Protocol that it was referencing – was to describe the temporal boundaries of the annual survey season for NSO.

4.       In Paragraph 16 of my September 2, 2025 Declaration, I described the circumstances under which additional visits to an activity center (more than those prescribed under the 3-visit and 6-visit protocol) may be needed if a spotted owl responds and resident status has not been determined. I provided an example based on 2025 surveys of the Project area, during which an unidentified NSO response occurred on July 23, 2025 in the Soapstone territory, which I stated was Visit 4 of the 2025 survey visits. I further stated that daytime Follow Up Outings were conducted on July 24 and July 25, and that the Revised Protocol did not require additional nighttime or daytime visits to follow up on this detection beyond completion of the standard 6 complete visits because the Revised Protocol does not require additional visits when detections are made during Visit 4 in a 6-visit survey.

5.       Since I signed my declaration on September 2, I have further reviewed the data sheets for the 2025 surveys for quality control purposes so that the data can be entered into the

Forest Service's Natural Resource Information System ("NRIS") database and to prepare them for submission to Plaintiffs' counsel, who requested copies through counsel for Defendants.

6.      During this further review of the data sheets documenting the survey visits, I realized that I miscounted the visits while drafting my September 2 Declaration, and the July 23 NSO detection in the Soapstone territory actually occurred during Visit 5 and not Visit 4.  Thus, the Revised Protocol required one additional visit (beyond the six standard visits), which should have been spaced at least seven days after the completion of the sixth visit , which occurred from August 6-13, 2025.  Therefore, the additional visit should have been conducted sometime on or after August 20, 2025.  FS-014913-14.  That is, while Forest Service staff and volunteers performed six standard visits, the fact that a detection was made during Visit 5 means that one additional visit, beyond the sixth standard visit, was required specifically to the detection area.

7.      The oversight in not conducting the additional visit at the earliest possible opportunity occurred at the ranger district level.  My miscounting of the visits while drafting Paragraph 16 of my declaration perpetuated this oversight.

8.      To address this oversight, the Forest Service conducted an additional visit to the detection area in the Soapstone territory on the evening of September 5, 2025, consistent with the Revised Protocol, which allows completion of additional visits up to September 30.  FS-014909.  During the September 5 visit, surveyors made another aural NSO detection (the "standard 4-note call") of unknown sex in the Soapstone territory.  Following the Revised Protocol, as with the July 23 detection, a daytime Follow-Up Outing to the detection area was conducted on September 6, 2025, where the detection area and both the current and former nest trees were thoroughly searched, but once again, no visual detection of any owls was made, and no evidence of any reproductive activity or nesting owls was found.

9.      Following the September 5, 2025 detection, I consulted with the U.S. Fish and Wildlife Service ("USFWS") on September 8, 2025 regarding the survey results and the 2025 status of the Soapstone territory.  USFWS advised that the two separate detections of individual NSOs of unknown sex in the Soapstone core area this year, taken together with the fact that territory was occupied by a territorial pair last year, was sufficient to establish resident single

status for the Soapstone territory for 2025.  *See* FS-014925 (multiple responses over several years can establish resident single status). Therefore, we have updated the 2025 status of the Soapstone territory to resident single of unknown sex, and this status supersedes the statements in Paragraphs 24 and 25 of my September 2, 2025 Declaration with respect to the Soapstone territory only.

10.    With the completion of the additional visit on September 5-6, 2025, the Shasta-Trinity National Forest has satisfied the 6-visit survey requirements pursuant to the Revised Protocol, with USFWS concurrence on September 8, 2025, and 2025 NSO surveys for the Project are complete.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this  8th  day of September, 2025, in the City of Redding, Shasta County, California.

ANN BOWERS  Digitally signed by ANN BOWERS
Date: 2025.09.08 14:55:26 -07'00'

**ANN BOWERS**
Forest Wildlife Biologist
Shasta-Trinity National Forest