UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KLAMATH FOREST ALLIANCE, et al.,<br>Plaintiffs,<br>v.<br>U.S. FISH AND WILDLIFE SERVICE, et al.,<br>Defendants. | No. 2:24-cv-02347-DC-CSK<br><br>ORDER VACATING BIOLOGICAL OPINION AND DECISION NOTICE AND REMANDING TO THE AGENCY FOR FURTHER PROCEEDINGS |

This matter is before the court on Plaintiffs Klamath Forest Alliance, Conservation Congress, Environmental Protection Information Center, Mount Shasta Bioregional Ecology Center's and Defendant U.S. Fish and Wildlife Service ("FWS") and U.S. Forest Service's ("FS") supplemental briefing on the appropriate remedy in light of this court's order granting summary judgment in favor of Plaintiffs. (Doc. Nos. 49–51.) For the reasons stated below, the court will vacate Defendant FWS's Biological Opinion and Defendant FS's Decision Notice and remand to the agencies for further proceedings consistent with this opinion and the court's order granting Plaintiffs' motion for summary judgment and denying Defendants' cross-motion for summary judgment (Doc. No. 49).

/////

/////

## BACKGROUND[1]

Plaintiffs challenged Defendant FWS's Biological Opinion ("BiOp") pursuant to the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531, *et seq.*, for the South Fork Sacramento Public Safety and Forest Restoration Project ("SFS Project"), located in the Shasta-Trinity National Forest and authorized by Defendant FS. In the BiOp, Defendant FWS concluded that the SFS Project is not likely to jeopardize the continued existence of the northern spotted owl ("NSO"), which is listed as a threatened species under the ESA. Plaintiffs challenged Defendant FWS's conclusion that the SFS Project is not likely to jeopardize the continued existence of the NSO, and Defendant FS's reliance thereon in its Decision Notice to proceed with the SFS Project, as arbitrary and capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).

In its order on Plaintiffs' motion for summary judgment and Defendants' cross-motion for summary judgment, the court found Defendant FWS's "no jeopardy" conclusion based on the recovery unit analysis for the NSO was arbitrary and capricious and thus in violation of the APA. (Doc. No. 49 at 19.) The court found that Defendant FS's Notice approving the SFS Project was likewise arbitrary and capricious because it relied on the legally flawed BiOp. (*Id.* at 22–23.) Consequently, the court granted summary judgment in favor of Plaintiffs on both of their claims.[2] The court did not address the proper remedy in its order, rather, it granted Defendants' request to provide the court with supplemental briefing on the appropriate remedy. (*Id.* at 23–24.)

## ANALYSIS

Plaintiffs request that the court vacate Defendant FWS's BiOp and Defendant FS's reliance on it, and remand for completion of a lawful ESA section 7 consultation. (Doc. No. 51 at 3.) Defendants, on the other hand, request that this court remand the BiOp and the Decision

---

[1] The court detailed the extensive factual and procedural background in this action in its order granting Plaintiffs' motion for summary judgment (Doc. No. 49) and thus will not recite it here.

[2] Specifically, Plaintiffs asserted in their complaint that: (1) Defendant FWS's BiOp and "no jeopardy" conclusion are arbitrary and capricious under the APA, 5 U.S.C. §§ 701–06, and not in accordance with the ESA, 16 U.S.C. §§ 1531–44; and (2) Defendant FS violated the APA and its duties under ESA Section 7 by relying on an unlawful and "legally flawed" BiOp for the SFS Project. (Doc. No. 1 at 34–37.)

Notice without vacatur. (Doc. No. 50 at 12.)

Pursuant to the APA, a district court may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Vacatur and remand is the default remedy when a court finds an agency action unlawful under the APA. *Montana Wildlife Fed'n v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025) (citing *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) (citation omitted). However, "the court retains equitable discretion in 'limited circumstances' to remand a decision without vacatur while the agency corrects its errors." *Id.* In the Ninth Circuit, whether agency action should be vacated depends on: (1) the seriousness of the agency's error, and (2) "the disruptive consequences of an interim change that may itself be changed." *Cal. Cmtys. Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012) (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)). Courts also consider "serious irreparable environmental injury" and other practical concerns that would result from vacatur. *AquAlliance v. U.S. Bureau of Reclamation*, 312 F. Supp. 3d 878, 881 (E.D. Cal. 2018) (citations omitted). Put differently, the court must weigh the "seriousness of the agency's errors against 'the disruptive consequences'" of delay caused by vacatur. *Pollinator Stewardship Council*, 806 F.3d 5 at 532 (quoting *Allied-Signal, Inc.*, 988 F.2d at 150–51).

Still, courts must "tip the scales in favor of the endangered species under the 'institutionalized caution' mandate" in balancing these factors in ESA cases. *Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin. Nat'l Marine Fisheries Serv.*, 109 F. Supp. 3d 1238, 1242 (N.D. Cal. 2015) (quoting *Sierra Club v. Marsh*, 816 F.2d 1376, 1383 (9th Cir. 1987). Because the APA creates a "presumption of vacatur," the party opposing vacatur bears the burden of demonstrating vacatur is not warranted. *Coal. to Protect Puget Sound Habitat v. U.S. Army Corps. of Eng'rs*, 466 F. Supp. 3d 1217, 1219 (W.D. Wash. 2020), *aff'd sub nom. Coal. to Protect Puget Sound Habitat v. United States Army Corps of Eng'rs*, 843 F. App'x 77 (9th Cir. 2021) (citing *Alliance for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121-22 (9th Cir. 2018)).

**A. Seriousness of Agency's Errors**

The seriousness of the agency's error is the first *Allied-Signal* factor. *Montana Wildlife Fed'n*, 127 F.4th at 51. This factor requires the court to consider whether "on remand, a different result may be reached." *Id.* (quoting *Pollinator Stewardship Council*, 806 F.3d at 532). Further, the court should consider "whether the agency would likely be able to offer better reasoning or whether by complying with procedural rules, it could adopt the same rule on remand, or whether such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand." *Pollinator Stewardship Council*, 806 F.3d at 532. The court must also consider whether "a faulty rule could result in possible environmental harm . . . ." *Id.*

According to Defendants, the errors this court identified in its summary judgment order are "limited and readily curable defect[s]," and that on remand, Defendant FWS does not anticipate that the issues identified by the court will require "reopening the BiOp itself or reinitiating consultation." (Doc. No. 50 at 9) (citing Doc. No. 50-2 at ¶ 5.) Defendants also represent that "[w]hile the agency has not pre-judged the process," they believe additional data will substantiate their initial conclusion regarding source populations. (*Id.*)

Despite Defendants' representations, the court does not find Defendants' position persuasive. The court determined that the "no jeopardy" conclusion for the NSO at the recovery unit scale was arbitrary and capricious due to the lack of analysis of alternative source populations in the BiOp. (Doc. No. 49 at 19.) The court found that "Defendant FWS has not articulated a rational connection between the facts and its conclusions that the SFS Project was not expected to measurably influence the provincial baseline or constitute an appreciable reduction in the recovery support function of the California Cascades and California Klamath recovery units." (*Id.*) As Plaintiffs point out, the identified errors are not merely technical or procedural formalities, rather, they are substantive errors under the ESA. *Cf. Cal. Cmtys. Against Toxics*, 688 F.3d at 993 (finding procedural error harmless and thus the error did not mandate vacatur); *Idaho Farm,* 58 F.3d at 1402–04 (finding procedural error involved the failure to provide public review of a specific report and thus the error did not mandate vacatur). Likewise, "the [c]ourt cannot simply accept [D]efendants' reassurances that they can readily cure these

[substantive] errors." *See Klamath-Siskiyou Wildlands*, 109 F. Supp. 3d at 1245. It is possible that once Defendant FWS re-analyzes source populations, it may come to a different conclusion because, based on the administrative record before the court on summary judgment, that analysis has not yet occurred. Therefore, the court cannot say for certain whether Defendant FWS will come to the same "no jeopardy" conclusion as it did in the BiOp. *See Pollinator Stewardship Council*, 806 F.3d at 532 (vacating agency action where "on remand, a different result may be reached"). Accordingly, the court finds that this factor weighs in favor of vacatur.

**B. Disruptive Consequences**

Under the second *Allied–Signal* factor, the court considers the disruptive consequences that would result from vacatur. *Cal. Cmtys. Against Toxics*, 688 F.3d at 992 (citing *Allied–Signal*, 988 F.2d at 150–51).

Defendants assert that vacatur would have "significant disruptive consequences." (Doc. No. 50 at 9.) Specifically, fuel reduction work that is funded by a Sierra Nevada Conservancy grant of approximately $3.3 million must be implemented by January 1, 2028. (Doc. No. 50-1 at ¶¶ 4, 6.) At least one non-commercial fuel activity funded by the grant is expected to commence on September 16, 2026. (Doc. No. 50 at 4, 9.) This activity would likely be delayed until "after the next fire season," and would not go "forward until the fall 2027 and it may not be possible for it to go forward at all." (Doc. No. 50 at 4 (citing Doc. No. 50-1 at ¶¶ 5, 6.)) Defendants assert that activity under the SFS Project that are "intended to reduce the risk of wildfire by removing ladder and surface fuels" are in the public interest, as well as benefit NSOs by protecting their habitat. (Doc. Nos. 50 at 10–11 (citing 50-1 at ¶¶ 5, 6.))

Plaintiffs argue that this factor weighs in favor of vacatur because "it would cause no unusual disruption and would avoid environmental harm." (Doc. No. 51 at 11.) Plaintiffs contend that remand without vacatur threatens more environmental harm than leaving Defendants' decision in place. (*Id.*) Plaintiffs argue that as Defendants have already determined in the BiOp, allowing the project to go forward as authorized would affect NSO reproduction, numbers, and distribution in the action area over the first ten years of implementation. (*Id.* at 12) (citing FWS-354.)

The court agrees with Plaintiffs that Defendants arguments as to disruptive consequences do not outweigh the seriousness of FWS's errors. *See Klamath-Siskiyou Wildlands Ctr.*, 109 F. Supp. 3d at 1245; *see also Pollinator Stewardship Council*, 806 F.3d at 532 ("In this case, given the precariousness of bee populations, leaving the EPA's registration of sulfoxaflor in place risks more potential environmental harm than vacating it."). First, Defendants have stated that the SFS Project will likely be delayed by only one year, in the context of a thirty-year total estimate for completion. (Doc. No. 50 at 12 (citing Doc. No. 50-1 at ¶ 6.)) Defendants also suggest that delay may lead to "possible forfeiture" of any remaining Sierra Nevada Conservancy grant funds. (*Id.*) The court is cognizant of the short window that Defendants may have to implement the fuel reduction activities under the grant if the court were to vacate the BiOp and Decision Notice. However, by Defendants' own estimate, they may have time to complete these activities in 2027 when they would still be funded by the Sierra Nevada Conservancy grant. (Doc. No. 50-1 at ¶ 5.) The potential forfeiture of grant funds and subsequent economic harm here is speculative, rather than definite. *Cf. Cal. Cmtys. Against Toxics*, 688 F.3d at 994 (remanding without vacatur where "[s]topping construction" of a power plant that is a "billion-dollar venture employing 350 workers" would be "economically disastrous" and endanger a region's power supply).

Further, as Plaintiffs point out, there is some disagreement in the BiOp about the "efficacy of treatments within owl habitat to influence fire behavior." (Doc. No. 51 at 12) (citing FWS-332) ("Depending on the existing vegetation condition and fire behavior, thinning treatments may or may not be effective at reducing high severity wildfire impacts to NSO habitat, depending on existing vegetation conditions and fire behavior . . . The effects of long-term removal of [NSO] habitat to try to conserve or protect habitat from loss or reductions from future wildfire is a trade-off."); (*Id.* at 12–13) (citing FWS-330) ("The FMZ [fuel management zone] treatment . . . which overlaps the majority of the modeled fire refugia, appears contradictory to maintaining and protecting these areas and the habitat they can provide."). Given the court's responsibility to "tip the scales in favor of the endangered species under the 'institutionalized caution' mandate," the court will err on the side of caution towards the preservation of the NSO. *Klamath-Siskiyou Wildlands Ctr.*, 109 F. Supp. 3d at 1242 (quoting *Sierra Club*, 816 F.2d at 1383). As outlined in

the court's order resolving the merits in this case, Defendant FWS has yet to make the critical finding that the SFS Project is "not likely to jeopardize the continued existence of the listed [species] or result in destruction or adverse modification of critical habitat." *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.,* 698 F.3d 1101, 1127 (9th Cir. 2012) (citing ESA § 7(a)(2), 16 U.S.C. § 1536(a)(2))

The court finds that despite the disruptive consequences of vacatur, the scale still tips in favor of vacatur due to the seriousness of the omitted analysis in the BiOp. The court acknowledges that pausing the activities under the SFS Project until the identified errors are corrected may potentially lead to the harm identified by Defendants. However, the court does not find that these speculative harms constitute "serious and irremediable harms that significantly outweigh the magnitude of the agency's error." *See League of Wilderness v. U.S. Forest Serv.*, No. 3:10-cv-01397-SI, 2012 WL 13042847, at *2 (D. Or. Dec. 10, 2012). Accordingly, the court will vacate the BiOp for the SFS Project issued by Defendant FWS and Defendant FS's Decision Notice based thereon.

**CONCLUSION**

For the reasons stated above,

1. The court VACATES the SFS Project Biological Opinion issued by Defendant FWS for the SFS Project;
2. The court VACATES the Defendant FS's Decision Notice;
3. This case is REMANDED to Defendant FWS and Defendant FS for further proceedings consistent with this order and this court's order granting Plaintiffs' motion for summary judgment (Doc. No. 49);

/////

/////

/////

/////

/////

/////

4. The Clerk of the Court is directed to enter judgment in favor of Plaintiffs and close this case.

IT IS SO ORDERED.

Dated: **September 15, 2026**

Dena Coggins
United States District Judge